Drake, Ch. J.,
delivered the opinion of the court:
The claimant was, on the 23d of September, 1863, appointed a midshipman in the United States Navy, and as such entered the Naval-Academy, where he pursued his studies until the 6th of June, 1867, when he received from the superintendent of that institution a certificate that he had “completed the prescribed course of study at the Academy, and had successfully passed the required examination before the academic board.”
He claims that, under a provision contained in section 11 of the Act July 16, 1862, “ to establish and equalize the grade of line officers of the United States Navyf (12 Stat; L., 583,) he was, at the date of that certificate, entitled to be appointed and commissioned an ensign in the Navy, but that, under a regulation of the Navy Department, he was required to perform service and duty as a midshipman in the Navy from that date until the 18th of December, 1868, when he was commissioned as ensign; and he claims the difference between the pay he received as midshipman between those two dates and the pay which by law was due to an ensign.
The provision in the act of 1862 upon which he relies is in these words:
“ That the students at the Naval Academy shall be styled midshipmen [and] until their final graduating examination, when, if successful, they shall be commissioned ensigns, ranking according to merit.”
It is very evident that the word and there is a clerical interpolation in the enrollment of the act, and that the sentence should be read without it; but its insertion does not alter the sense.
The question is whether that provision entitled the claimant to be commissioned as ensign as soon as he received the certificate of June 6, 1867. We are of the opinion that no such force can be rightfully given to it, for the following reasons :
I. The use of the words “ final graduating examination ” seems evidently to point to some examination preceding that which *483 was then known as the final one. And this indication is borne out by the evidence in the ease.
On the 16th of August, 1860, the Secretary of the Navy promulgated certain regulations of the Naval Academy which were in force when the Act Jnhj 16, 1862, was passed. Among those regulations were the following:
“Chapter YI. — Academic examinations.
“An annual examination of all the classes shall be held by the academic board, commencing on the 1st day of June.
“ Any acting midshipman * * * may be graduated at any June examination at which he may be found fully qualified to pass a graduating examination.
“Every acting midshipman who succeeds in passing a graduating examination in June will receive from the academic board a certificate of graduation, which will entitle him to a warrant as a midshipman- in the Navy, bearing the same date as that certificate.”
“ Chapter YIII — Final examination op graduates.
1..“A board to consist of five captains and commanders * * * will convene annually * * * for the purpose of making the final examination of midshipmen, to ascertain and decide upon their qualifications for promotion.
2. “ Midshipmen whose appointments bear date subsequent to the 1st of January, 1851, will not be entitled to a ‘ final examination,’ unless they shall have received a certificate of graduation from the Naval Academy; have performed two and a half years’ sea-service in the Navy, including their sea-service in the practice-ship ; do produce certificates from their respective commanding officers of their good conduct and attention to duty, together with journals of all their cruises ; and, besides, quarter, watch, and station bills of at least one of the vessels in which they have sailed, in their own handwriting.
3. “ The examination by the board will embrace seamanship and naval tactics, practical gunnery, navigation, and management of steam-engines; and the standing in these branches shall be combined to determine the relative merits of the members of the class at this examination.
4. “In assigning numbers to the candidates on their final exam *484 ination, the number 1,000 is to be considered as expressing the maximum, and 333 as the minimum, to be allowed j and the board will assign to such candidates as shall, in its opinion, be duly-qualified for promotion, the number, within those limits, which, in the judgment of the board, will fairly express their relative qualifications.
5. “The numbers thus assigned, when added to the numbers which have already been assigned to them respectively on the ‘graduating merit-rolls’ of the Naval Academy, will determine their standing as passed midshipmen; the highest number to take precedence.
6. “ The Secretary of the Navy will cause the board of examiners to be furnished with the numbers which had been assigned by the academic board to each of the midshipmen, to enable the board of examiners to determine the relative standing of those whom they may examine, as required in the next preceding article.”
That the existence of these regulations was known to Congress when the act of 1862 was passed cannot for a moment be doubted; and they afford a clear explanation of the use in that act of the words “final graduating examination.” So far from authorizing the promotion of a midshipman to ensign upon Ids passing the academic examination, they have the effect of prohibiting his promotion then, and of requiring him to pass the second or “ final graduating examination” before he could be commissioned an ensign.
II. But even if this position were not tenable, the claimant cannot recover salary as ensign prior to December 18, 1868, for the simple reason that prior to that date he was not an ensign. However clear and strong his legal right might have been to be commissioned as such when he passed the academic examination, the fact remains that he was not so commissioned, and the law gave him no right to the salary until he got the commission.
III. Though the law might be held to have authorized his appointment as ensign when he passed the first examination, it would not necessarily follow that he ever would be so appointed; for his becoming an ensign depended, not upon the operation of the act of 1862, but upon his being nominated by the President and confirmed by the Senate for that office; neither of which things might ever be done. For reasons deemed suffi- *485 oient, the President might not nominate or the Senate might not confirm him for the position; or, after nomination and. confirmation, the President might, on grounds considered adequate, decline to commission him, In either case he would not be an ensign. The issue of the commission is that which confers the office and the right to its pay.
The claimant's petition must be dismissed.